UNITED STATES, Appellee

v

FRANK M. FENSTERMAKER, Specialist Five, U. S. Army, Appellant

17 USCMA 578, 38 CMR 376

No. 20,902

May 31, 1968

*Captain Dennis R. Hunt* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Major David J. Passamaneck.*

*Captain Joel P. Schiff* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

QUINN, Chief Judge:

Sergeant Holmgren shot himself on the night of February 15, 1967. Specialist Five Michael H. Ostrowsky, Holmgren's "good friend," learned of his death the next morning. He did not believe Holmgren was a suicide, and he thought the accused and a Korean, Hyong Ki Kim, were somehow "involved" in his death. As a result, with the knowledge and consent of an agent of the Office of Special Investigations, he became associated with the accused and Kim in two transactions which ultimately led to the accused's trial and conviction on separate counts of theft and disposition of cans of blood albumin belonging to the United States, in violation of Articles 121 and 108, Uniform Code of Military Justice, 10 USC §§ 921 and 908, respectively. Thereafter, the Judge Advocate General of the Army referred the record of trial to a board of review for review, and that tribunal affirmed the findings of guilty and the sentence approved by the convening authority. Under the provisions of Article 67(b)(2), Code, supra, 10 USC § 867, the Judge Advocate General certified the case to this Court for consideration of the following question:

Was the board of review correct in holding the findings of guilty and the approved sentence correct in law and fact and affirming them?

At trial, the accused contended he was entrapped by Ostrowsky into participating in the offenses. See United States v McGlenn, 8 USCMA 286, 24 CMR 96. He established that he had been in medical supply since 1959 and had an unblemished record. He testified that it had never before "crossed" his mind to do "anything like this," and "had it not been for Specialist Ostrowsky" he would not have joined in the transactions. There were substantial differences between his testimony and Ostrowsky's as to who initiated the discussions about procuring medical supplies and as to how the cans of albumin were turned over to Kim for disposition. The accused insisted that Ostrowsky proposed the acquisition of albumin and that Ostrowsky actually obtained the cans through his contacts at an Army hospital. Ostrowsky admitted he had personally obtained the albumin, but he testified to circumstances indicating that the accused was already engaged in criminal conduct and was willing to participate in the acquisition and disposition of the albumin. See United States v Hawkins, 6 USCMA 135, 19 CMR 261. Among other things, he testified he observed the accused obtain cases of beer from the military post exchange and turn them over to Kim. He ascertained from the accused that he received 100 Won (37 cents) for each case. Also, to test the extent of the accused's involvement in transactions of this kind, he asked the accused if he "could get rid" of certain Government tools for him, and the accused told him he would "check on it." Ostrowsky admitted, however, that the matter went no further.

By appropriate instructions, the defense of entrapment was submitted to the court-martial. See United States v Hawkins, supra; United States v Ward, 14 USCMA 3, 33 CMR 215. From the findings of guilty, it is apparent that the court-martial resolved the conflict in the testimony against the accused. Appellate defense counsel contend that this finding is wrong as a matter of law. They maintain that the sale of post exchange items to a civilian and the accused's comments on Ostrowsky's request that he dispose of certain tools are insufficient to generate a reasonable supposition that the accused was inclined to be a ready participant in the theft and disposition of medical supplies. See Butts v United States, 273 Fed 35 (CA 8th Cir) (1921). Involvement in "an existing course of similar criminal conduct" to that charged is potent evidence that the accused was more a willing participant, than a dupe beguiled into committing the offenses by the incitement and persuasion of a

Government agent. United States v Hawkins, supra, at page 141. Whether these other acts by the accused were, as a matter of law, insufficient to kindle a belief that he was ready and willing to steal and dispose of medical supplies need not detain us. Assuming they constitute evidence of readiness to commit the acts charged if the opportunity arose, there are elements in the evidential structure, apart from the accused's testimony, which, in our opinion, are of overriding importance.

Ostrowsky made a secret tape recording of a conversation he had with Kim on the night of February 16, in which he and Kim discussed the procurement of medical supplies for Kim and the prices Kim could obtain for them. A transcript of the tape was admitted into evidence as a defense exhibit. Besides casting substantial doubt upon Ostrowsky's testimony that Kim initially "approached" him and asked for albumin "for this disposition," the transcript demonstrates that, as far as the accused is concerned, Ostrowsky originated and pressed the scheme to acquire albumin. According to the transcript, Ostrowsky injected the accused's name into his conversation with Kim on several occasions. At one point, he asked Kim whether he could tell the accused about the discussion and the arrangements between them. Kim replied: "Keep to yourself." At least twice more in the conversation,[1] Ostrowsky assured Kim that he would not tell the accused "about this." However, that same day, he told the accused he had obtained a list of items that Kim indicated he could sell, and he specifically "mentioned" albumin. Ostrowsky's conduct virtually demolishes his contention that the accused asked him to procure albumin; conversely, it supports the accused's testimony that Ostrowsky told him he could get albumin. The record of trial compels the conclusion that the Government just did not sustain its burden of proving that Ostrowsky provided the opportunity, rather than improper inducement, to the accused to commit the offenses. United States v McGlenn, supra.

The certified question is answered in the negative, and the decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and the charges are ordered dismissed.

Judges FERGUSON and KILDAY concur.

[1] Parts of the recording were inaudible.