UNITED STATES, Appellee

v

JAMES O. DORSEY, JR., Lance Corporal, U. S. Marine Corps, Appellant

19 USCMA 458, 42 CMR 60

No. 22,630

May 28, 1970

*Lieutenant Scott M. Feldman*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Thomas F. Bastow*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever*, USMC, and *Lieutenant Colonel Lawrence G. Bohlen*, USMC.

## Opinion of the Court

QUINN, Chief Judge:

Brought to trial before a general court-martial at Cherry Point, North Carolina, on a charge of wrongful possession of marihuana (Charge I and its specification), and wrongful possession of phenobarbital and other drugs, in violation of a Navy regulation (Charge II and its specification), the accused was acquitted of the first charge and convicted of the second. The question presented by this appeal is whether he was entrapped into obtaining the prohibited substances by an informer functioning under the control of an agent of the Office of Naval Intelligence. See United States v Fenstermaker, 17 USCMA 578, 38 CMR 376 (1968).

About a week and a half before the transaction which led to his arrest for possession of the prohibited drugs, the accused met Lance Corporal J. L. Weeks. Weeks was acting as an informer for ONI Agent J. F. Oliveri, who had invited him to help in Oliveri's investigation into illegal drug activities at the Marine Corps Air Station, Beaufort, South Carolina. According to the accused, for an "entire week" Weeks had been "hounding me to locate some pills for him." Weeks admitted that the accused never mentioned leaving the air station to obtain the drugs. He also admitted that on at least two occasions he asked the accused to go "into partnership" with him, and two or three times he asked the accused to go with him to the City of Savannah to " 'score' " which meant to get "pills, marijuana or anything," but the accused "kept putting . . . [him] off."

On Friday night, Weeks asked the accused to go to Savannah with him on Saturday night to attend "the races." The accused agreed. That night, Weeks telephoned the ONI to advise that he hadn't "pick[ed] up anything" yet, but he might be able to "pick up some Saturday." On Saturday, Weeks called for the accused in his car, and they drove into Savannah. At the accused's direction, they went to the residence of the mother of a girl friend of the accused. The accused knew the mother as a "licensed nurse" and he "guess[ed]" she would have "pills" available. Weeks gave the accused ten dollars because the accused "didn't have any money." The accused and the woman went "into the back room" and when the accused emerged he had several packages of "pills" which he put into his pocket. Asked whether the accused took the pills "to hold for you or himself," Weeks replied: "I don't know what he was taking these pills for." Weeks telephoned Agent Oliveri from Savannah that night to advise him "that he had them."

Oliveri and Weeks testified that Weeks had been cautioned not to do anything "illegal." Our reading of the record, however, convinces us that Weeks induced the accused to take part in an illegal transaction "when otherwise he would not have done so." Sherman v United States, 356 US 369, 371, 2 L Ed 2d 848, 78 S Ct 819 (1958); United States v Fenstermaker, supra.

The decision of the board of review is reversed. The findings of guilty and the sentence are set aside, and the charge is ordered dismissed.

Judges FERGUSON and DARDEN concur.