*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
TANG, LAWRENCE, and ATTANASIO,
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Tyler D. FARLEY**
Interior Communications
Technician Second Class (E-5), U.S. Navy
Appellant

**No. 201900120**

Decided: 3 March 2020.

Appeal from the United States Navy-Marine Corps Trial Judiciary. Military Judge: Captain Aaron Rugh, JAGC, USN. Sentence adjudged 7 January 2019 by a general court-martial convened at Naval Base San Diego, California, consisting of a military judge sitting alone. Sentence approved by the convening authority: confinement for 24 months,[1] a fine of $250.00, and a bad-conduct discharge.

For Appellant: Captain Bree A. Ermentrout, JAGC, USN.

For Appellee: Major Kyle D. Meeder, USMC; Lieutenant Joshua C. Fiveson, JAGC, USN.

_____

[1] Pursuant to a pretrial agreement, the convening authority suspended confinement in excess of 15 months.

Judge ATTANASIO delivered the opinion of the Court, in which Senior Judge TANG and Judge LAWRENCE joined.

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 30.2.**

———————————————

ATTANASIO, Judge:

Appellant was convicted, in accordance with his pleas, of one specification of conspiracy to wrongfully distribute a controlled substance, two specifications of making a false official statement, one specification of wrongfully introducing a controlled substance onto an installation used by the armed forces with intent to distribute the controlled substance, one specification of wrongful distribution of a controlled substance, four specifications of wrongful use of a controlled substance, and two specifications of wrongful possession of a controlled substance, in violation of Articles 81, 107, and 112a, Uniform Code of Military Justice (UCMJ).[2]

Appellant originally submitted his case to this Court on its merits, without specific assignment of error. Upon review of the record of trial, we specified the following issue:

> *Is there a substantial basis to question the providence of Appellant's guilty plea to Charge II, Specification 1, because the guilty plea inquiry raised the possible defense of entrapment to introduce drugs on base, but the military judge did not inform Appellant of the entrapment defense and did not ask Appellant or his defense counsel whether they believed the defense applied?*

After carefully considering the record and reviewing the parties' briefs, we answer the specified question in the negative—we find no substantial basis in law or fact to question the guilty plea, and affirm the findings and sentence as approved by the convening authority.

---

[2] 10 U.S.C. §§ 881, 907, 912a (2016).

## I. BACKGROUND

During a three-month period—February to April 2018—Appellant engaged in a spate of drug-related crimes that totaled nine separate drug offenses. Appellant possessed, used, distributed, and conspired to distribute cocaine; used and possessed psilocybin mushrooms; used ecstasy; used LSD; and, as relates to the specified issue, introduced with intent to distribute 3.5 grams of cocaine on board Naval Base San Diego.

In February 2018, Appellant entered into a conspiracy with another Sailor to distribute cocaine. Appellant and his co-conspirator arranged to purchase one ounce of cocaine with the intent to sell the cocaine for profit. Appellant supplied half of the money to purchase the cocaine with the expectation that profits from subsequent sales would be divided equally between Appellant and his co-conspirator.[3]

On or about 28 February 2018, Appellant's co-conspirator advised Appellant to expect contact from a buyer who wanted to purchase 3.5 grams of cocaine. The buyer was in fact an undercover Naval Criminal Investigative Service (NCIS) agent. Later that day, the undercover agent telephoned Appellant to arrange a meeting. Appellant described that phone call to the military judge as follows:

> I was then contacted by a number that I did not know. They were asking me to meet them on 32nd Street dry-side base. I asked them to come off of base. They insisted on—that they did not own a car and that they could not meet me at my apartment. So then we eventually agreed on meeting at the NEX Autoport. I then met them at the NEX Autoport here on 32nd Street base to facilitate the actual distribution of the 3.5 grams of cocaine.[4]

The Stipulation of Fact described Appellant's transaction with the undercover agent as follows:

> I introduced cocaine onto Naval Base San Diego on 28 February 2018. [My co-conspirator] was on duty that day and asked

---

[3] Appellant voluntarily entered into this conspiracy to distribute cocaine, made no attempts to withdraw from or abandon the conspiracy, could have avoided joining the conspiracy, and admitted that he was not forced or coerced into the conspiracy. Record at 32-33, Prosecution Exhibit (Pros. Ex.) 2 at 1-2.

[4] Record at 33.

me to meet a potential buyer. I initially suggested my apartment; however, the buyer said he didn't have a car and asked me to come on the dry side of the 32nd Street Base. I told him he needed to come off base for the buy, but I finally agreed to go to him at the NEX Autoport. I entered the NEX Autoport with the cocaine to sell it to the buyer. I understood that I was entering a military facility when I entered Naval Base San Diego NEX Autoport. I did not have any legal justification for bringing cocaine onto Naval Base San Diego and could have avoided doing so if I chose. Once on board Naval Base San Diego, I met the buyer and completed the transaction.[5]

Appellant transported the controlled substance onboard Naval Base San Diego by driving his car onto the base with 3.5 grams of cocaine in his coat pocket.[6] Appellant then distributed the cocaine to the undercover buyer and received cash in exchange.[7] Appellant confirmed that he drove the cocaine onto the base with the intent to distribute it.[8]

Appellant, an experienced San Diego Sailor, explained that he knowingly introduced the cocaine onto Naval Base San Diego.[9] Appellant told the military judge that no one forced him to introduce cocaine onto Naval Base San Diego, that he could have avoided doing so if he had wanted to, and that he did so without legal justification or excuse.[10]

The military judge did not address entrapment with Appellant or his counsel.

---

[5] Pros. Ex. 2 at 2.

[6] Record at 34.

[7] *Id*. at 33-34, 44.

[8] *Id*. at 44, Pros. Ex. 2 at 2.

[9] *Id*. at 34-35.

[10] *Id*. at 44; Pros. Ex. 2 at 2.

## II. DISCUSSION

### A. Standard of Review

Before accepting a guilty plea, a military judge must ensure the plea is supported by a factual basis.[11] The military judge must elicit sufficient facts to satisfy every element of the offense in question.

On appeal, we review a military judge's decision to accept a plea of guilty for an abuse of discretion.[12] Questions of law arising from the guilty plea are reviewed de novo.[13] A reviewing appellate court may only reject a guilty plea if there is a substantial basis in law or fact, based on the entire record of trial, to question the plea.[14]

In *United States v. Inabinette,* our superior court wrote:

There exist strong arguments in favor of giving broad discretion to military judges in accepting pleas . . . . As a result, in reviewing a military judge's acceptance of a plea for an abuse of discretion appellate courts apply a substantial basis test: Does the record as a whole show "'a substantial basis' in law and fact for questioning the guilty plea." *United States v. Prater,* 32 M.J. 433, 436 (C.M.A. 1991).

Traditionally, this test is presented in the conjunctive (i.e., law *and* fact) . . .; however, the test is better considered in the disjunctive (i.e., law *or* fact). That is because it is possible to have a factually supportable plea yet still have a substantial basis in law for questioning it. This might occur where an accused knowingly admits facts that meet all the elements of an offense, but nonetheless . . . states matters inconsistent with the plea that are not resolved by the military judge. At the same time, where the factual predicate for a plea falls short, a

[11] Article 45(a), UCMJ; *see also United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969); RULE FOR COURTS-MARTIAL (R.C.M.) 910(e), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2016 ed.).

[12] *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008) (quoting *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996)).

[13] *See id.* (citing *United States v. Pena*, 64 M.J. 259 (C.A.A.F. 2007)).

[14] *Id.* (citing *United States v. Prater,* 32 M.J. 433 (C.M.A. 1991)).

> reviewing court would have no reason to inquire de novo into any legal questions surrounding the plea.[15]

The inquiry is sufficient "if 'the factual circumstances as revealed by the accused himself objectively support that plea.'"[16] We evaluate this question "in terms of the providence of his plea, not sufficiency of the evidence."[17]

When a military judge makes a ruling—including the decision to accept a guilty plea—based on an erroneous view of the law, he abuses his discretion.[18]

A potential defense to the charged crime constitutes "matter inconsistent with the plea" under Article 45(a), UCMJ. If, at any time during the proceeding, the accused advances a matter raising a possible defense, then the military judge is obligated to make further inquiry to resolve any apparent ambiguity or inconsistency.[19] A failure to do so constitutes a substantial basis in law and fact for questioning the guilty plea.[20] However, "[t]he military judge is not required 'to embark on a mindless fishing expedition to ferret out or negate all possible defenses or potential inconsistencies.'"[21]

Once the military judge has accepted the pleas and entered findings based upon them, an appellate court will not reverse those findings and reject the plea unless it finds a substantial conflict between the pleas and the accused's

---

[15] *Id.*

[16] *United States v. Markert*, 65 M.J. 677, 680-81 (N-M Ct. Crim. App. 2007) (quoting *United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996)).

[17] *Id.* at 681.

[18] *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (citing *United States v. Passut*, 73 M.J. 27 (C.A.A.F. 2014)).

[19] *United States v. Phillippe*, 63 M.J. 307, 309 (C.A.A.F. 2006) (citing *Prater*, 32 M.J. at 436)).

[20] *See id.* at 311.

[21] *United States v. Miranda*, No. NMCCA 201100084, 2011 CCA LEXIS 502 at *8 (N-M Ct. Crim. App. 6 Sep. 2011) (unpub. op.) (quoting *United States v. Jackson*, 23 M.J. 650, 652 (N.M.C.M.R. 1986)).

statements or other evidence of record.[22] More than a "mere possibility" of such a conflict is required to overturn the trial results.[23]

**B. Analysis**

Appellant argues that the military judge abused his discretion by accepting Appellant's guilty plea to wrongful introduction without first conducting an inquiry into the entrapment defense which, the Defense asserts, was reasonably raised during the plea inquiry. The Defense contends that the military judge ignored a "clear warning flag" of entrapment by failing to inquire further when the Appellant "advised that the NCIS agent insisted he meet on base."[24] The Government counters that the evidence did not reasonably raise the defense of entrapment because there was no government inducement and Appellant was predisposed to commit the offense.

We find no substantial basis in law or fact to question the providence of Appellant's guilty plea to wrongful introduction. The military judge was not required to inquire into the entrapment defense because the matters addressed during the providence inquiry did not reasonably raise the potential defense of entrapment. The record does not raise any reasonable possibility of government inducement and demonstrates predisposition on Appellant's part. As a result, and on the basis of the entire record, we find that the military judge did not abuse his discretion by accepting Appellant's guilty plea.

*1. Entrapment generally*

Entrapment is an affirmative defense in which "the criminal design or suggestion to commit the offense originated in the [g]overnment and the accused had no predisposition to commit the offense."[25] The entrapment doctrine is a relatively limited defense aimed at drawing a line "between the trap for the unwary innocent and the trap for the unwary criminal."[26]

---

[22] *United States v. Shaw*, 64 M.J. 460, 462 (C.A.A.F. 2007).

[23] *Id.*

[24] Appellant's Brief at 5.

[25] R.C.M. 916(g).

[26] *United States v. Bell*, 38 M.J. 358, 359-60 (C.M.A. 1993) (quoting *Sherman v. United States*, 356 U.S. 359, 372 (1958)).

"[E]ntrapment has two elements: government inducement and an accused with no predisposition to commit the offense."[27] "The [D]efense has the initial burden of . . . show[ing] that a government agent originated the suggestion to commit the crime."[28] Once the Defense has met this initial burden, the burden shifts to the Government to prove beyond a reasonable doubt either: (1) that the "criminal design did not originate with the [g]overnment"; or (2) "that the [A]ccused had a predisposition to commit the offense . . . prior to first being approached by [g]overnment agents."[29]

Regarding specifically entrapment and drug crimes, the Supreme Court has commented that:

> [A]n agent deployed to stop the traffic in illegal drugs may offer the opportunity to buy or sell drugs, and, if the offer is accepted, make an arrest on the spot or later. In such a typical case, or in a more elaborate "sting" operation involving government-sponsored fencing where the defendant is simply provided with the opportunity to commit a crime, the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition.[30]

### 2. Inducement

For the government to entrap someone, it must first engage in some kind of inducement.[31] Inducement requires more than the government simply providing the "opportunity or facilities to commit the crime" but must rise to the level of "conduct that creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense."[32]

---

[27] *United States v. Howell*, 36 M.J. 354, 358 (C.A.A.F. 1993) (citations omitted).

[28] *United States v. Hall*, 56 M.J. 432, 436 (C.A.A.F. 2002) (quoting *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992) (additional citations and internal quotation marks omitted)).

[29] *Id.* (citations and internal quotation marks omitted).

[30] *Bell*, 38 M.J. at 360 (C.M.A. 1993) (quoting *Jacobson v. United States*, 503 U.S. 540, 549-50 (1992)).

[31] *Howell*, 36 M.J. at 359-60.

[32] *Hall*, 56 M.J. at 436-37 (citations and internal quotation marks omitted); *see also* R.C.M. 916(g) (discussion) (2016 ed.) ("The fact that persons acting for the

Inducement may take the form of pressure, pleas, persuasion, coercion, threats, harassment, or fraudulent representations.[33]

In this case, Appellant and the undercover NCIS agent spoke on the phone and initially did not agree where to meet to complete the drug deal. According to his colloquy with the military judge, Appellant suggested his apartment but the undercover buyer "insisted on—that they did not own a car and that they could not meet me at my apartment" and sought to meet on base.[34] Appellant told the undercover buyer that "he needed to come off base for the buy" but eventually agreed to meet on base to complete the transaction.[35]

We do not detect in that phone conversation an inducement, nor do we find it in Appellant's statement that the buyer "insisted" they conduct the transaction on base. Notwithstanding Appellant's word choice, the facts demonstrate that the undercover agent did nothing more than request an on-base meeting. The stipulation of fact reflects exactly that, a request not a demand: "the buyer said he didn't have a car and *asked* me to come on [base]."[36]

Appellant and the undercover agent reconciled where to meet during a single phone conversation. This single remote communication from an unknown caller taken together with the agent's sole asserted reason for wanting to meet on base—his lack of a car—reveals no coercion, threats, or harassment; nor the type of plea, pressure, or persuasion required for inducement, particularly where Appellant personally affirmed that no one forced him to introduce cocaine on base, that he could have avoided doing so if he had wanted to, and that he did so without legal justification or excuse.[37]

By doing nothing more than requesting that Appellant meet on base, the undercover agent merely provided Appellant with "an opportunity to commit the crime" of introducing drugs on base. Appellant's suggestion of an alter-

---

[g]overnment merely afford opportunities or facilities for the commission of the offense does not constitute entrapment").

[33] *Hall*, 56 M.J. at 436.

[34] Record at 33.

[35] Pros. Ex. 2 at 2.

[36] Pros. Ex. 2 at 2 (emphasis added).

[37] Record at 44; Pros. Ex. 2 at 2.

nate off-base meeting place does not transform the undercover agent's permissible provision of criminal opportunity into impermissible inducement.[38]

*3. Predisposition*

"Evidence that 'a person accepts a criminal offer without being offered extraordinary inducements . . . demonstrates his predisposition to commit the type of crime involved.'"[39] When this willingness to commit a crime is exhibited, the actions of government agents along with the person's predisposition prior to contact should be considered to ensure this predisposition was not the result of the government influence.[40] The government need not have evidence of an individual's criminal activity before approaching.[41]

Here, we find no extraordinary inducements in Appellant's acceptance of the undercover agent's offer to buy drugs on base from Appellant. The undercover agent offered, and Appellant received, nothing more than the ordinary proceeds from an illegal drug sale. The record reveals no dispute over the sale price, indicating that Appellant was apparently familiar with the "going rate" for cocaine.[42] Appellant's combined profits for this sale plus two additional drug deals totaled $250.00.[43] Appellant's ready commission of the offense after a single non-coercive phone call from a previously unknown person at an unknown number demonstrates predisposition. Put simply, in

---

[38] *See Hall*, 56 M.J. at 437 (quoting *Howell*, 36 M.J. at 360) ("government agent's repeated requests for drugs 'do not in and of themselves constitute the required inducement.'"); *United States v. Hamilton*, No. 201000589, 2011 CCA LEXIS 81 at *14 (N-M. Ct. Crim. App. 28 Apr. 2011) (unpub. op.) (same); *United States v. Battle*, No. 200900603, 2010 CCA LEXIS 708 at *5 (N-M. Ct. Crim. App. 25 Feb. 2010) (unpub. op.) (mere fact NCIS informant persisted in asking for drugs after accused's initial refusals did not constitute entrapment).

[39] *Bell*, 38 M.J. at 360 (quoting *United States v. Evans*, 924 F.2d 714, 718 (7th Cir. 1991)) (additional citation omitted); *see also United States v. Lubitz*, 40 M.J. 165, 167 (C.M.A. 1994).

[40] *See United States v. Jacobson*, 503 U.S. 540, 553 (1992).

[41] *Bell*, 38 M.J. at 360 (citing *United States v. Swets*, 563 F.2d 989, 991 (10th Cir. 1977), *cert. denied*, 434 U.S. 1022 (1978)).

[42] *See Lubitz*, 40 M.J. at 167 (appellant's knowledge of the going rate for drugs was factor refuting entrapment).

[43] Record at 32, 45.

the absence of extraordinary inducements, Appellant with specific intent introduced cocaine on board base for the criminal purpose of selling illegal drugs for profit in furtherance of his own preexisting criminal conspiracy to wrongfully distribute a controlled substance.

Accordingly, we find ample support in the record to conclude Appellant was predisposed to commit the type of crime at issue.

### *4. Entrapment not reasonably raised by the plea inquiry*

Based on our review of the entire record, for the reasons stated above, we do not find the government's conduct crossed the line "between the trap for the unwary innocent and the trap for the unwary criminal." There can be no entrapment where, as here, the record demonstrates the absence of inducement and the presence of predisposition. Therefore, the military judge was not required to inquire into the entrapment defense. Accordingly, we find no substantial basis in law or fact to question the providence of Appellant's guilty plea to Specification 1 of Charge II.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and no error materially prejudicial to Appellant's substantial rights occurred. Arts. 59, 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Senior Judge TANG and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court