**UNITED STATES, Appellee,**

v.

**Jeffrey K. WHITTLE, Corporal
U.S. Army, Appellant.**

**Nos. 66,458.
CM 8903299.**

U.S. Court of Military Appeals.

Argued Dec. 3, 1991.
Decided May 11, 1992.

847

For Appellant: *Captain Michael Huber* (argued); *Colonel Robert B. Kirby, Major Michael J. Kelleher, Captain Alan M. Boyd* (on brief); *Captain Timothy P. Riley.*

For Appellee: *Major Kenneth T. Grant* (argued); *Colonel Dayton M. Cramer, Major Thomas E. Booth, Captain Karen R. O'Brien* (on brief); *Captain Timothy J. Saviano.*

*Opinion of the Court*

CRAWFORD, Judge.

Appellant was tried by a military judge sitting as a general court-martial. Contrary to his pleas, appellant was convicted of wrongful distribution of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $200 pay per month for 10 months, and reduction to private E1. The convening authority approved the sentence. The Court of Military Review, after specifying the issue of entrapment personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (CMA 1982), affirmed the findings and sentence in an unpublished opinion dated February 14, 1991.

The underlying facts are not in dispute. The Criminal Investigation Command (CID) called Michelle R into its office for questioning concerning use and distribution of drugs with another soldier. She agreed to cooperate with the CID and gave the full names of four or five individuals plus "Jeff," whom she alleged were involved in use and distribution of drugs. The military police corroborated the fact that these four or five were involved with drugs.

Michelle R agreed to cooperate with Army investigators in their drug suppression efforts and arrange "a controlled buy" involving "Jeff" (appellant) and an undercover agent. Late in the afternoon of January 30, 1989, she telephoned appellant's quarters twice and spoke to his wife as appellant had not arrived home. A short while later she called again and this time spoke to appellant. She asked if he could get some drugs for her. He replied that he did not know. She then asked if "Mike," a mutual acquaintance, would know where to get some drugs. Again, appellant said he did not know. At Michelle R's request appellant then agreed to call Mike, who said he did not have any drugs but that "T" might. Mike called "T" and determined that "T" had some drugs. Mike then called appellant to relay this information, togeth-

er with "T's" beeper number, so that appellant could call him. Appellant called "T's" beeper number, and a short while later "T" telephoned appellant. They made arrangements to meet at a rendezvous point to buy some cocaine at a predetermined cost. This information was relayed to Michelle R. According to appellant, Michelle R had "no transportation" and asked appellant to pick up the money at her house and obtain the drugs. Appellant initially refused; but after Michelle R persisted, appellant agreed "just to get her off my back." Michelle R. called him again and asked why he had not arrived to pick her up. He testified that he did not intend to go but that she then became "angry" and demanding, and he said he would be over to pick up the money and go to the rendezvous point. At Michelle R's home appellant was introduced to the undercover agent and provided the cash for the purchase. He then drove to the rendezvous point which was 30 minutes from the installation. At the rendezvous point appellant purchased the cocaine for $270.00, which was less than the announced price. He then returned to Michelle R's house and delivered it to her and the undercover agent. Appellant made no profit on the transaction.

Days after the controlled buy the undercover agent saw appellant and asked for a "pickup." Appellant replied, "I don't do that no more."

■ The military judge as factfinder found appellant guilty and rejected the defense of entrapment. The court below, in its factfinding role, agreed. The test for determining legal sufficiency of the evidence "is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (CMA 1987)(citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

RCM 916(g), Manual for Courts–Martial, United States, 1984, sets forth two elements for a defense of entrapment: "It is a

defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." This has been called the subjective entrapment test. *United States v. Clark*, 28 M.J. 401, 406–07 (CMA 1989).

■ The first element is generally referred to as the inducement element and the second as the predisposition element. As to the inducement element, the term " 'Government' includes agents ... cooperating with them (for example, informants)." RCM 916(g), Discussion. The Discussion continues: "Entrapment occurs only when the criminal conduct is the product of the creative activity of law enforcement officials." RCM 916(g) and the Discussion are based on paragraph 216*e*, Manual for Courts–Martial, United States, 1969 (Revised edition). Drafters Analysis of RCM 916(g), 1984 Manual, *supra* at A21–57 (Change 2).

This objective test set forth in the Manual should not be taken too literally. Otherwise, all attempts by government undercover agents to purchase narcotics would result in entrapment. Simply because there has been government contact is not enough to establish persuasion in the mind of an innocent individual.

The Government concedes that Michelle R was a government agent in this case. Certainly she falls within the definition set forth above in the Discussion.

One of the criticisms of the subjective test is the potential for introduction of hearsay and uncharged acts of misconduct. *United States v. Russell*, 411 U.S. 423, 443, 93 S.Ct. 1637, 1648, 36 L.Ed.2d 366 (1973) (Stewart, J., dissenting) ("Moreover, a test that makes the entrapment defense depend on whether the defendant had the requisite predisposition permits the introduction into evidence of all kinds of hearsay, suspicion, and rumor—all of which would be inadmissible in any other context—in order to prove the defendant's predisposition."); *United States v. Vanzandt*, 14 M.J. 332, 344 (CMA 1982); Mil. R. Evid. 801(c), 1984 Manual, *supra; cf. United States v.*

*Vizcarra–Porras*, 889 F.2d 1435, 1439–40 (5th Cir.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2192, 109 L.Ed.2d 520 (1990); *Nash v. United States*, 405 F.2d 1047, 1052–55 (8th Cir.1969). Here the judge specifically excluded evidence that appellant was involved with drugs.

■ The defense has the initial burden of going forward to show that a government agent originated the suggestion to commit the crime. Once the defense has come forward, the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense, *United States v. Vanzandt, supra* at 342–43, "prior to first being approached by Government agents." *Jacobson v. United States*, — U.S. —, —, 112 S.Ct. 1535, 1540, 118 L.Ed.2d 147 (1992).

The question of predisposition relates to a law-abiding citizen. "A law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes." *United States v. Evans*, 924 F.2d 714, 717 (7th Cir.1991). Judge Posner continued, "When a person accepts a criminal offer without being offered extraordinary inducements, he demonstrates his predisposition to commit the type of crime involved." *Id.* at 718. *See also United States v. Ford*, 918 F.2d 1343 (8th Cir. 1990).

■ In this case the evidence certainly supports the conclusion that the idea for the offense originated with the government agent, but the Government likewise offered evidence to establish beyond a reasonable doubt a predisposition by appellant to commit the offense. A person who had no predisposition to commit the offense could have done many things, including just telling the telephone caller no. That is certainly not what appellant did here. To assist in obtaining drugs appellant agreed to call Mike, who in turn called "T," with appellant serving as a conduit for this information to ensure that the criminal offense could take place. Additionally, it

was appellant who knew the rendezvous point and was able to purchase the cocaine. There were no extraordinary inducements. Michelle R merely afforded the accused "the opportunity to" commit the offense. *Jacobson v. United States, supra,* —— U.S. at ——, 112 S.Ct. at 1541; *Sherman v. United States,* 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). There were two telephone calls without any fraud, trickery, or extraordinary inducement and no face-to-face confrontation putting pressure on appellant. *United States v. Suter,* 21 USC-MA 510, 45 CMR 284 (1972). Michelle R did not have to go to his residence 5 times over an 11–day period: *United States v. Skrzek,* 47 CMR 314, 316 (ACMR 1973); "hound" appellant for a week: *United States v. Dorsey,* 19 USCMA 458, 42 CMR 60 (1970); or solicit appellant over a 26–month period: *Jacobson v. United States, supra,* —— U.S. at ——, 112 S.Ct. at 1539.

The Government has presented credible evidence from which a factfinder might conclude beyond a reasonable doubt that there was no entrapment. Additionally, the facts do not raise the "due-process defense" of entrapment. *See United States v. Russell,* 411 U.S. at 431, 93 S.Ct. at 1642 (the conduct of government agents may be "so outrageous that due process" would "bar" a conviction). *See generally United States v. Clark,* 28 M.J. at 406 n. 4.

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX and GIERKE concur.

Judge WISS and Senior Judge EVERETT did not participate.