UNITED STATES, Appellee

v.

Richard L.M. LUBITZ, Fire Controlman Third Class, U.S. Navy, Appellant.

No. 66344.
CMR No. 89–3935.

U.S. Court of Military Appeals.

Argued April 7, 1994.

Decided Aug. 23, 1994.

Certiorari Denied Dec. 5, 1994.
See 115 S.Ct. 636.

For Appellant: *Lieutenant Alice B. Lustre,* JAGC, USNR (argued).

For Appellee: *Captain A. Diaz,* USMC (argued); *Colonel T.G. Hess,* USMC, and *Commander S.A. Stallings,* JAGC, USN (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

Contrary to his pleas, appellant was convicted by officer members of distribution of lysergic acid diethylamide (LSD) and of cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The convening authority approved the sentence of a bad-conduct discharge, 6 months' confinement, total forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review affirmed the findings and sentence in an unpublished opinion dated April 9, 1993. We granted review on the following issues: *

* The third issue has been resolved in favor of the Government in *United States v. Mitchell,* 39 MJ 131 (CMA 1994).

## I

WHETHER THE COURT OF MILITARY REVIEW PROPERLY AFFIRMED APPELLANT'S CONVICTION OF SPECIFICATION 3 OF THE CHARGE (WRONGFUL DISTRIBUTION OF LSD) IN VIEW OF THE SUBSTANTIAL EVIDENCE OF ENTRAPMENT ADDUCED IN THE GOVERNMENT'S CASE IN CHIEF.

## II

WHETHER THE EVIDENCE IS SUFFICIENT AS A MATTER OF LAW TO SUSTAIN THE FINDING OF GUILTY TO SPECIFICATION 4 OF THE CHARGE (WRONGFUL DISTRIBUTION OF COCAINE) WHERE THE GOVERNMENT'S EVIDENCE SHOWED ONLY THAT APPELLANT WAS A CONDUIT FOR THE DRUG BETWEEN TWO GOVERNMENT AGENTS. SEE *UNITED STATES v. BRETZ*, 19 MJ 224 (CMA 1985).

We hold, employing the *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), standard, that the Court of Military Review properly affirmed appellant's conviction of specification 3 of the Charge and, as to specification 4, that appellant was not a mere conduit between two government agents.

## FACTS

Appellant and Fire Controlman Third Class Kyle Burke were classmates attending school at the Naval Training Center, Great Lakes. At the time, Burke was awaiting a court-martial for possessing cocaine, larceny, and housebreaking. To obtain leniency at his own trial, Burke agreed to cooperate with the Naval Investigative Service (NIS) in identifying individuals involved with drugs. Burke provided information concerning civilians involved with drugs, but the NIS was primarily interested in obtaining information about servicemembers. Burke had no knowledge linking appellant with drugs until he heard appellant talking about LSD at an auto shop on base during November 1988.

Subsequently Burke approached appellant and asked if he knew where Burke could get some LSD. Appellant replied, " 'No problem, I can get it anywhere. It's all over.' " Burke asked the price and appellant asserted that "it depended on how much he wanted." When asked how much LSD could be purchased for $25–40, appellant said, " 'It runs somewhere between $5 and $8 a hit.' " As the Court of Military Review noted, "This colloquy occurred the *first* time Burke asked appellant if he knew where Burke could get some LSD." Unpub. op. at 2.

Over the next 3 to 7 days Burke asked appellant about getting LSD between 6 and 12 more times. On November 21, 1988, appellant took both Burke's money and car and went to purchase LSD. Appellant returned late that evening and told Burke he would meet him the next morning at McDonald's Restaurant on base. They met at McDonald's but did not exchange the LSD there. Instead, appellant got into Burke's car and, while driving from the restaurant to appellant's barracks, appellant handed nine hits of LSD to Burke.

Between November and January, appellant and Burke saw each other nearly every day. On January 11, 1989, Burke asked appellant if he could get some more LSD for a friend named Mike. Unbeknownst to appellant, "Mike" was an undercover NIS agent. Appellant replied, " 'Sure, we might be able to work something out.' " After classes that day, "appellant and Burke drove to Chicago where appellant, using NIS money supplied by Burke, eventually purchased some cocaine. Appellant put the cocaine in a gum wrapper." Burke, with appellant's knowledge, arranged to deliver the cocaine to Mike, the undercover NIS agent, at the on-base McDonald's Restaurant.

When Burke and appellant arrived at the McDonald's parking lot, Burke left the cocaine in the car and went to use the restroom. Appellant eventually became tired of waiting in the car, so he took the cocaine and went into the restaurant. "Appellant immediately ran into Mike," the undercover agent. "After confirming Mike's identity, appellant and Mike" left the restaurant, and appellant

passed the cocaine to him. Mike suggested arranging another buy, to which appellant responded, "Maybe sometime we could."

On April 5, 1989, after being warned of his rights, appellant admitted "that, prior to meeting Burke," he "had driven [other] Marine friends to Chicago to buy LSD."

The Court of Military Review found that appellant did not keep or use the drugs or profit from any transaction. Unpub. op. at 3.

## STANDARD OF REVIEW

As to Issues I and II the standard of review is whether the evidence viewed in the light most favorable to the Government is sufficient for a reasonable factfinder to have found the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789.

## ENTRAPMENT

RCM 916(g), Manual for Courts–Martial, United States, 1984, recognizes the defense of entrapment and provides that it arises when "the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." Thus there are two elements to the defense: "The first element is generally referred to as the inducement element and the second as the predisposition element." *United States v. Whittle*, 34 MJ 206, 208 (CMA 1992). There is no issue in this case that the inducement was by Burke, an agent cooperating with the Government. *See* RCM 916(g), Discussion. The evidence presented at trial establishes that Burke's only prior knowledge connecting appellant with possible involvement in drugs was appellant's conversation about LSD which Burke overheard at the auto shop in November 1988.

The issue in this case centers on the predisposition element and whether the Government has shown beyond a reasonable doubt that appellant was predisposed to commit the offenses. As we stated in *Whittle:*

The question of predisposition relates to a law-abiding citizen. "A law-abiding person is one who resists the temptations, which abound in our society today, to commit crimes." *United States v. Evans*, 924 F.2d 714, 717 (7th Cir.1991). Judge Posner continued, "When a person accepts a criminal offer without being offered extraordinary inducements, he demonstrates his predisposition to commit the type of crime involved." *Id.* at 718. *See also United States v. Ford*, 918 F.2d 1343 (8th Cir.1990).

34 MJ at 208.

Appellant argues that there are several factors which support his claim of entrapment: First, prior to Burke's overhearing appellant's statement, the Government did not know the accused's name or have reason to believe he would sell drugs—*United States v. Suter*, 21 USCMA 510, 45 CMR 284 (1972); second, appellant was approached 6 to 12 times over a 3– to 7–day period of time—*United States v. Skrzek*, 47 CMR 314 (ACMR 1973); third, the Government furnished the money to obtain the drugs—*United States v. Williams*, 3 MJ 555 (ACMR 1977), *rev'd on other grounds*, 4 MJ 336 (CMA 1978); and fourth, appellant did not profit from the transaction or take part of the drugs—*United States v. Hebert*, 1 MJ 84 (CMA 1975); *United States v. Young*, 2 MJ 472 (ACMR 1975).

On the other hand, there are a number of factors that would refute appellant's claim of entrapment: First, appellant was merely afforded the opportunity to commit the crime—*Jacobson v. United States*, —— U.S. ——, ——, 112 S.Ct. 1535, 1541, 118 L.Ed.2d 174 (1992); *Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); *United States v. Whittle*, 34 MJ at 208; second, appellant knew the "going rate" for drugs and where drugs might be purchased—*United States v. Skrzek*, 47 CMR 314 (ACMR 1973); third, there was no fraud or trickery or coercion by the government agent—*United States v. Whittle*, 34 MJ at 209; *United States v. Suter*, 21 USCMA 510, 45 CMR 284 (1972); and fourth, appellant had driven other Marines to Chicago to buy drugs—*United States v. Fenstermaker*, 17 USCMA 578, 38 CMR 376 (1968).

The question before us is whether the factfinders erred. As we indicated in *United States v. Whittle*, 34 MJ at 207:

> The military judge as factfinder found appellant guilty and rejected the defense of entrapment. The court below, in its factfinding role, agreed. The test for determining legal sufficiency of the evidence "is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 MJ 324 (CMA 1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)).

In this case, the court members "heard the testimony of the witnesses, observed the personal demeanor of each witness, and were in a superior position to judge the credibility of their testimony and to accept or reject it according to their judgment as to its truthfulness." *United States v. Albright*, 9 USCMA 628, 631, 26 CMR 408, 411 (1958). "This judgment should not be overturned lightly." *United States v. Evans*, 6 MJ 577, 579 (ACMR 1978).

Applying the *Jackson* standard, we agree that the Court below was correct in rejecting the defense of entrapment.

## MERE CONDUIT

■ As to Issue II the defense argues that appellant was merely a conduit in the transfer of cocaine between two government agents, Burke and Mike. Thus, the defense argues that the evidence is insufficient as a matter of law to convict him of distribution of cocaine, citing *United States v. Bretz*, 19 MJ 224 (CMA 1985). A transfer of drugs between two government agents would not be unlawful. *See United States v. Hill*, 25 MJ 411 (CMA 1988). Appellant argues that, at most, he was an aider and abettor of the sale by the dealer to Burke—an offense not charged. The offense charged alleged that the place of distribution was the Great Lakes Naval Training Center, where the transfer from appellant to "Mike" occurred; the purchase from the dealer took place in Chicago, Illinois.

The prosecution theory was that appellant was the buyer, having obtained the drugs from the dealer with money supplied by Burke, and that appellant transferred the drugs to "Mike," the covert government agent.

*Bretz* is clearly distinguishable. Bretz was convicted of the possession and sale of marijuana. 19 MJ at 224. He solicited another soldier, Breitbach, to assist him in selling drugs. Bretz ultimately gave Breitbach the key to his "hooch," allowing Breitbach unlimited access to his drug cache. Later, Breitbach was apprehended for making a sale to an undercover agent and decided to cooperate with the investigators. He agreed to set up a drug buy with Bretz. Breitbach, however, informed the investigators that he didn't need Bretz to get access to the drug cache and instead led them directly to the "hooch," whereupon he distributed nine bags of marijuana to the undercover agent.

The Government charged Bretz with the sale of these nine bags of marijuana. This Court set aside Bretz' conviction for that sale because Breitbach was then no longer Bretz' agent but instead was working for the Government. *Id.* at 227. More importantly, the Court found that, at the time of the sale of marijuana, "the Government was in a position readily to seize the contraband; and there was no need to buy the marijuana, which for all practical purposes already was under the Government's control." *Id.* at 227.

The prosecution theory in this case was submitted to the trier of fact under proper instructions, and they convicted appellant. Under the standard of *Jackson v. Virginia*, 443 U.S. at 319, 99 S.Ct. at 2789, there is sufficient evidence to support this theory on which appellant was convicted.

The 1993 decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX and GIERKE concur.

SULLIVAN, Chief Judge (concurring):

Evidence was admitted that the substance of the transaction in this case was that appellant bought and then delivered drugs to Mike

on base on January 11, 1989. *Cf. United States v. Dayton,* 29 MJ 6, 12 (CMA 1989). He was not a conduit between Burke and Mike but between the Chicago dealer and Mike. I see no lawful distribution in this context. *Cf. United States v. Hill,* 25 MJ 411 (CMA 1988); *United States v. Bretz,* 19 MJ 224 (CMA 1985).

WISS, Judge (concurring):

Appellant's conduit theory posits that the real distribution here was between Burke and Mike; as both were government agents, appellant argues that the transfer of drugs was not unlawful, citing *United States v. Hill,* 25 MJ 411 (CMA 1988). Appellant rests his theory on the fact that Burke momentarily handled the drugs after appellant had purchased them from a street dealer in Chicago and before arriving at the installation at Great Lakes, where appellant delivered the drugs to Mike.

Instead, I view this case as a distribution from appellant to Mike: Burke asked appellant to get the drugs for Mike; appellant agreed to get drugs for Mike; Burke, as Mike's agent (in the generic sense), gave appellant money for Mike's drugs; appellant purchased the drugs from the street dealer in order to give them to Mike; and ultimately he did in fact give the drugs to Mike, albeit with a brief handling by Burke in the car before returning from Chicago to the Naval station. I do not believe that the fleeting interim handling of the drugs by Burke does anything to vitiate this chain of events that began and ended as a distribution of drugs from appellant to Mike.

This was the theory of the prosecution, and there is sufficient evidence from which rational factfinders could have concluded appellant was guilty. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). That being the case, appellant's conduit theory does not accurately reflect the facts—it simply was not, in fact, a distribution from Burke to Mike: It did not start out that way, it never became that way, and it did not end that way. Thus, *United States v. Hill,* 25 MJ 411 (CMA 1988), is inapplicable.