*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
CRISFIELD, HOLIFIELD, and LAWRENCE
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Joseph L. HUNTER**
Culinary Specialist First Class (E-6), U.S. Navy
Appellant

**No. 201900154**

Decided: 16 November 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Shane E. Johnson (arraignment and motions)
Stephen C. Reyes (trial)

Sentence adjudged 1 February 2019 by a general court-martial convened at Joint Base Pearl Harbor-Hickam, Hawaii, consisting of officer members. Sentence approved by the convening authority: reduction to E-1, total forfeiture of pay and allowances, confinement for 14 months, and a bad-conduct discharge.

For Appellant:
*Lieutenant Gregory Hargis, JAGC, USN*

For Appellee:
*Lieutenant Kevin G. Edwards II, JAGC, USN*
*Lieutenant Commander Timothy C. Ceder, JAGC, USN*

Chief Judge Emeritus CRISFIELD delivered the opinion of the Court, in which Senior Judge HOLIFIELD and Judge LAWRENCE joined.

_____

**This opinion does not serve as binding precedent but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

_____

CRISFIELD, Chief Judge Emeritus:

Appellant was convicted, contrary to his pleas, of two specifications of attempted sexual abuse of a child, in violation of Article 80, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 880. He raises a single assignment of error: that he was denied the effective assistance of counsel by his trial defense counsel team's failure to effectively utilize the services of an expert consultant. After careful consideration of the record of trial and the pleadings of the parties, we find no prejudicial error and affirm.

## I. BACKGROUND

Appellant searched the "casual encounters" section of Craigslist for sexual companionship. He found a promising advertisement titled "lonely summer" in which the poster stated they lived on Hickam and were looking to meet someone to "just have fun for the summer."[1] Appellant replied to the advertisement, stating that he lived close to Hickam and inviting the poster to meet with him. Three days later, he received a response from "Liz Lizzy,"[2] who inquired if Appellant was in the military. Appellant replied quickly and stated that he was in the military and worked at Pearl Harbor, close to Liz Lizzy's location. She replied, "Yeah i live with my parents I am 14 about to turn 15."[3] Appellant then asked, "And what u looking for."

The emails back and forth continued in the curious vernacular of modern social media conversation. Appellant: "I never been with a woman that young though. What u got to offer me. You like older guys."[4] The conversation

_____

[1] Pros. Ex. 2.

[2] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

[3] Pros. Ex. 3 at 4.

[4] *Id*. at 14.

eventually migrated to a social media application. On that app, Appellant learned that Liz Lizzy was actually "Emily." Appellant asked where Emily's parents were, if she was home alone, and if she was in high school. He swiftly turned the conversation to sexual topics and expressed his desire for Emily to masturbate him. Less than two hours after the start of their conversation, Appellant asked Emily, "are u home alone now."[5] They then started making arrangements to meet at Emily's house on the base at Hickam. Emily gave Appellant directions to her house and Appellant drove there to meet her. Less than three hours after their conversation started, Appellant was at Emily's front door in anticipation of their imminent sexual encounter.

Of course, Liz Lizzy/Emily was not a fourteen-year-old girl at all, but rather was a male Air Force Office of Special Investigations [AFOSI] special agent posing as an underage girl as part of an online "to catch a predator" operation. When Appellant showed up at the door of the house where he believed he was about to get sexual relief from his new fourteen-year-old friend, he was apprehended by AFOSI special agents. Appellant was questioned by Naval Criminal Investigative Service special agents later that day and—although disputing how early in the conversation he realized she was only fourteen years old—confessed that he knew Emily was fourteen years old at the time he showed up at her door.

In preparing for trial, Appellant requested that a particular forensic psychologist, Dr. GH, be provided as an expert consultant to examine Appellant's risk of recidivism and mental condition, as well as the reliability of his confession. The convening authority denied the specific request for Dr. GH but appointed another forensic psychologist, Dr. RK, as a substitute and granted twenty hours of pretrial consultation.

Dr. RK's brief relationship with the trial defense counsel [TDC] team was marked by miscommunication and misunderstanding. In the course of her forensic examination she informed Appellant that the TDC team was not representing his interests well. Her gratuitous opinion sprang from her misunderstanding about how Appellant's TDC team and its workload were organized and distributed. Following the examination, Dr. RK informed an associate civilian counsel on the TDC team that Appellant had no predisposition to commit the alleged offenses and no risk of recidivism. She also stated that she had used up the twenty hours of funding and would require more money before she could discuss the details of her findings.

---

[5] Pros. Ex. 4 at 4.

The lead civilian defense counsel [CDC] moved to have Dr. RK replaced as a paid consultant by his originally requested expert, Dr. GH, due to the TDC team's and Appellant's loss of confidence in Dr. RK's services. They were concerned that Dr. RK was undermining the relationship between Appellant and his Defense team. The military judge denied the motion but approved an additional ten hours of consultation time and one day of in-court testimony from Dr. RK. The military judge found that Dr. RK's testimony was "potentially" relevant for sentencing purposes even though it was unclear whether it would be useful on the merits. There followed an extended period where CDC was unable to get in touch with Dr. RK while she was vacationing in Europe. Finally, upon Appellant's motion to once again remove Dr. RK based on her unavailability and substitute Dr. GH, the military judge granted the request.

The TDC team's relationship with Dr. GH was also marked by miscommunication and confusion. Dr. GH wanted to obtain copies of Dr. RK's forensic analysis to assist in his own analysis. To that end he asked the CDC to have Appellant sign a release form and provide it to Dr. RK so she would transfer the information to him. The CDC tasked Appellant to sign the release and to personally deliver it to Dr. RK, but Appellant neglected to perform the task until he was repeatedly reminded by the TDC team. Appellant signed the form over a month later and gave it back to the TDC team, who then provided it to Dr. GH, but it is unclear what happened to it then. Dr. GH never obtained any records from Dr. RK and, for reasons that are unclear, never performed his own examination of the Appellant. Dr. RK later stated that she would not have required a release from Appellant and would have provided her work to Dr. GH even without one. The CDC consulted with Dr. GH and discussed the conclusions that Dr. RK said she had reached, but the Defense did not further use Dr. GH's services. No expert testified at trial, either on the merits or during sentencing.

## II. DISCUSSION

**Appellant Received Effective Assistance of Counsel**

Appellant asserts that his TDC were ineffective for failing to investigate the results of Dr. RK's evaluation; failing to deliver those findings to Dr. GH; and failing to have Dr. GH evaluate Appellant. He argues that investigation and presentation of Dr. RK's findings and evaluation by Dr. GH may have provided reasonable doubt and resulted in acquittal. Further, Appellant argues that the failure to investigate prevented the members from hearing expert testimony in sentencing that likely would have resulted in a lesser sentence.

We review claims of ineffective assistance of counsel de novo. *United States v. Harpole,* 77 M.J. 231, 236 (C.A.A.F. 2018). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate both (1) that his counsel's performance was deficient, and (2) that this deficiency resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

*1. Appellant has not demonstrated that his counsel were deficient*

With respect to *Strickland's* first prong, counsel are presumed to be competent and our inquiry into an attorney's representation is "highly deferential." *Id.* at 689. We employ "a strong presumption that counsel's conduct falls within the wide range of professionally competent assistance." *Id.* Appellant has the heavy burden of establishing a factual foundation for a claim of ineffective representation. *See United States v. Grigoruk*, 52 M.J. 312, 315 (C.A.A.F. 2000) ("sweeping, generalized accusations" will not satisfy an appellant's foundational burden).

We will not second-guess strategic or tactical decisions made by the TDC unless Appellant can show specific defects in counsel's performance that were unreasonable under prevailing professional norms. *United States v. Mazza*, 67 M.J. 470, 475 (C.A.A.F. 2009).

We do not believe that Appellant has carried his burden of establishing a factual foundation that testimony from a forensic psychologist—whether Dr. RK or Dr. GH—would have provided a viable defense to the charge and specifications or would have mitigated his sentence. Dr. RK provided an eight-page affidavit which includes but one sentence regarding her findings: "Generally, I recall finding that CS1 Hunter was susceptible to the suggestibility of investigators and had a very low risk of recidivism."[6] Appellant has presented no evidence about his TDC's discussions with, or any conclusions reached by, Dr. GH.

The record establishes that TDC consulted with both Dr. RK and Dr. GH and made a decision to not call a forensic psychologist to testify at trial. We employ a strong, but rebuttable, presumption that those consultations and that decision were within the wide range of professionally competent assistance. We find that Appellant has fallen far short of presenting a foundation to overcome that presumption. Therefore, Appellant has failed to satisfy the first prong of *Strickland*.

---

[6] Appellant's Brief, Appendix A at 7.

*2. Appellant has not demonstrated that he was prejudiced by a deficiency*

Assuming, arguendo, that Appellant had established that his TDC were professionally deficient, we would still find no prejudice under *Strickland's* second prong. In order to show prejudice, an appellant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

On the merits, the evidence against Appellant was overwhelming. The Defense argued both entrapment and mistake-of-fact defenses, but neither was viable.

For the entrapment defense to prevail, "the defense has the initial burden of . . . show[ing] that a government agent originated the suggestion to commit the crime." *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992). Once the defense has met its burden, the burden shifts to the government to prove beyond a reasonable doubt either: (1) that the "criminal design did not originate with the Government"; or (2) "that the accused had a predisposition to commit the offense prior to first being approached by Government agents." *Id.* (citation and internal quotation marks omitted). "The bottom line is that entrapment has two elements: government inducement and an accused with no predisposition to commit the offense." *United States v. Howell*, 36 M.J. 354, 358 (C.A.A.F. 1993).

Appellant contends that the Government induced him to commit the offenses, but it is clear from the evidence that Appellant was the first to suggest a sexual relationship with a fourteen-year-old. The mere fact that the Government posted the "lonely summer" advertisement on Craigslist does not constitute inducement. There is no inducement where government agents simply provide "the opportunity or facilities to commit the crime." *United States v. Hall*, 56 M.J. 432, 437 (C.A.A.F. 2002).

Appellant also contends that there is no evidence that he had a predisposition to commit the offenses—he had no criminal background, and the Government failed to show that he had previously sought out underage individuals for sex or that he searched for or looked at child pornography. However, the evidence amply proves his predisposition. His swift pursuit of sexual contact with Emily, even after being told she was fourteen years old, demonstrates his predisposition. He initiated the sexual conversation with Emily, described in detail the sexual acts he wanted her to perform on him, requested pictures from her, and asked multiple questions to establish the

logistical feasibility of meeting her to engage in sexual activity as soon as possible. Appellant's sole concern after being told by Emily that she was fourteen was whether she was a real person. Her age was not even a speed bump on his path to sexual relief. Appellant's interactions with Emily demonstrated his readiness and willingness to commit the offenses. His behavior was not that of a law-abiding citizen or a person undisposed to committing sexual acts with minors. Less than three hours after they started conversing online, Appellant was at Emily's door.

Appellant also contends that his sentence would have likely been less severe if a forensic psychologist had testified that he was at low risk of recidivism. Again, assuming, arguendo, that his TDC were deficient in failing to present expert testimony, we find that Appellant was not prejudiced by the failure of his counsel to present such evidence. Facing the possibility of a sentence including twenty years' confinement and a dishonorable discharge, Appellant received only fourteen months and a bad-conduct discharge for his offenses. Obviously, the members either found that he was not a significant risk to re-offend in the near future, or they were not particularly concerned about him re-offending. We find no reasonable probability that his sentence would have been less than fourteen months' confinement and a bad-conduct discharge if an expert had testified that he was a low risk for recidivism.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred. UCMJ arts. 59, 66. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

Senior Judge HOLIFIELD and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court